LOMURRO, MUNSON, COMER, BROWN & SCHOTTLAND, LLC
**CHRISTINA VASSILIOU HARVEY, ESQ.**
**ATTORNEY ID NO.: 023642004**
4 Paragon Way, Suite 100
Freehold, New Jersey 07728
(732) 414-0300
Attorney for Plaintiff

| | |
|---|---|
| W.M.;<br><br>Plaintiff,<br><br>vs.<br><br>J.O. f/n/a J.M.; Estate of H.V.; Estate of W.V.; SAINT MARY'S CATHOLIC CHURCH GLOUCESTER CITY; ROMAN CATHOLIC DIOCESE OF CAMDEN; PRUDENTIAL INSURANCE COMPANY OF AMERICA; and JOHN DOE, a fictitious party;<br><br>Defendants. | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY<br>DOCKET NO.:<br><br>CIVIL ACTION<br><br>**VERIFIED COMPLAINT** |

Plaintiff, W.M., by his attorneys Lomurro, Munson, Comer, Brown & Schottland, LLC, by way of Complaint against Defendants, J.O. f/n/a J.M., the Estate of W.V., Estate of H.V., Saint Mary's Catholic Church Gloucester City, the Roman Catholic Diocese of Camden, Prudential Insurance Company of America, and John Doe, a fictitious party, alleges as follows:

## **NATURE OF COMPLAINT**

1.     This case involves the tragic physical, sexual, and mental abuse suffered by W.M. ("Plaintiff") as a minor by his own mother, J.O., formerly known

as J.M., his and maternal uncle, W.V., while Plaintiff resided with them from approximately 1997 through 2002.

## THE PARTIES

2.      Plaintiff W.M. is an individual who currently resides in Fort Hood, Texas, and during the relevant time-period was a minor who lived in Gloucester City, New Jersey. Plaintiff is the first-born son of Defendant J.O.

3.      Defendant J.O. is the mother of Plaintiff W.M. and E.M., who is now deceased. She currently resides at 51 Flanders Lane, Albany, New York, and lived with Plaintiff in Gloucester City, New Jersey during the relevant time-period. Defendant J.O. was an active participant in the sexual abuse of Plaintiff and permitted her brother, W.V., to sexually and physically abuse plaintiff for several years.

4.      Defendant Estate of W.V. is an entity and resident of the State of New Jersey, the last known address being 456 North Broadway, Gloucester City, New Jersey 08030. W.V., Plaintiff's maternal uncle, repeatedly sexually abused Plaintiff, from the time Plaintiff was approximately 4 years old until he was 8 years old while living at Plaintiff's mother's house.

5.      Defendant Estate of H.V. is an entity and resident of the State of New Jersey, the last known address being 456 North Broadway, Gloucester City, New Jersey 08030. H.V., Plaintiff's maternal grandfather, owned and occupied the house where the numerous sexual abuses occurred.

2

6.     Defendants Saint Mary's Catholic Church Gloucester City located in Gloucester City, New Jersey and Roman Catholic Diocese of Camden are religious entities operating within Gloucester City, New Jersey, who became aware of the sexual abuse but took no action to report it or otherwise stop the abuse.

7.     Defendant John Doe, upon information and belief, is an individual whose identity is currently unknown to Plaintiff, but who worked as a priest for Saint Mary's Catholic Church Gloucester City in Gloucester City, New Jersey during the relevant time period. Plaintiff disclosed to John Doe the sexual abuse Plaintiff's mother and uncle were committing upon Plaintiff, however, upon information and belief, nothing was done in response.

8.     Defendant Prudential Insurance Company issued life insurance in which Defendant J.O. is a named beneficiary.  Upon information and belief, Prudential is issuing or will be issuing proceeds to Defendant J.O.  Defendant Prudential is being named solely for the relief sought in Count Eight.

## JURISDICTION AND VENUE

9.     Jurisdiction of this Court over Plaintiffs' claims is predicated on diversity jurisdiction as Plaintiff W.M. is a resident of the State of Texas, and no Defendant is a resident of the State of Texas, and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332.

10.     Venue is proper in this District because conduct giving rise to this action occurred within this District of New Jersey in Camden County, New Jersey.

3

## ALLEGATIONS COMMON TO ALL CLAIMS

11.    Plaintiff repeats and restates the allegations of all the preceding paragraphs as if set forth at length herein.

12.    Plaintiff alleges long-term sexual abuse at the hands of his mother, Defendant J.O., and maternal uncle, Defendant Estate of W.V., including but not limited to the years 1997 to 2001 when his mother had primary custody of him and his brother, E.M.

13.    Throughout many years in the home of J.O, W.V., and H.V., Defendants J.O. and H.V., with cold-blooded impunity and malice, facilitated by additional Defendants, repeatedly committed sexual battery upon the Plaintiff in the County of Camden, New Jersey, with the intent to commit harmful and sexually offensive contact with the intimate parts of plaintiff, repeatedly committed sexual battery upon Plaintiff by having physical contact with Plaintiff. These contacts included but not limited to Defendants J.O. and W.V. fondling Plaintiff's intimate parts while naked in bed with Plaintiff, sexually penetrating Plaintiff's anus with fingers and foreign objects, forcing Plaintiff to watch J.O. and W.V. engage in incestuous sexual acts together, and forcing Plaintiff to watch Defendants abuse Plaintiff's younger brother, E.M., who is now deceased.  These actions were taken for J.O. and W.V.'s own self-gratification and harmed W.M.

14.   Plaintiff was born on June 29, 1994 in or around Mount Laurel, New Jersey. Soon after Plaintiff was born, Plaintiff and his parents moved to Pennsylvania.

15.   In or around 1997, Plaintiff's parents divorced and Plaintiff's mother, Defendant J.O., was granted primary custody of Plaintiff and his younger brother.

16.   In or around 1997, Defendant J.O. took Plaintiff and his younger brother to live with Defendant H.V., Plaintiff's maternal grandfather, in Gloucester City, New Jersey.

17.   Plaintiff and his family, including Defendants, were long-time parishioners of Saint Mary's Catholic Church Gloucester City in Gloucester City, New Jersey.

18.   Upon information and belief, from 1997 through approximately 2001, Plaintiff resided at Defendant H.V.'s home in Gloucester City, New Jersey with Defendants J.O. and W.V.

19.   Upon information and belief, in or around 1997 when Plaintiff first moved in with Defendants J.O., H.V., and W.V.

20.   Upon information and belief, when Plaintiff was approximately 4 or 5 years old, Plaintiff was subjected to physical abuse at the hands of W.V. At first, the abuse was confined to W.V. hitting and choking Plaintiff. However, after living with Defendants J.O., W.V., and H.V. for a few months, the physical abuse escalated into sexual abuse at the hands of J.O. and W.V.

21.     Upon information and belief, Defendant J.O. would walk around the house fully naked in front of Plaintiff, Defendant W.V., and Defendant H.V. Additionally, upon information and belief, Defendant H.V. would openly watch pornographic material on the television in front of Plaintiff and Defendants J.O. and W.V.

22.     Upon information and belief, beginning when Plaintiff was approximately four or five years old, Defendants J.O. and W.V. began sexually abusing Plaintiff approximately four times a week. The sexual abuse began with Defendant W.V., in the presence of Defendant J.O., grabbing Plaintiff's intimate parts and buttocks.

23.     Upon information and belief, during the relevant time-period, Defendants J.O. and W.V. forced Plaintiff to strip his clothes and accompany Defendants J.O. and W.V. in bed as they engaged in incestuous, sexual acts with one another unclothed. Additionally, both Defendants W.V. and J.O. would forcibly fondle Plaintiff's intimate parts while in bed with one another.

24.     Upon information and belief, Plaintiff told Defendants J.O. and W.V. that he did not want to join them in bed naked, however, Defendants threatened Plaintiff if he did not acquiesce to their demands.

25.     Upon information and belief, on multiple occasions, Defendant W.V. forcibly penetrated Plaintiff's anus with his fingers and foreign objects, including but not limited to kitchen utensils.

26. Upon information and belief, during the relevant time-period, Plaintiff's mother, Defendant J.O. would forcibly perform numerous enemas on Plaintiff whenever he complained of a stomachache.

27. Upon information and belief, in or around 1999, Plaintiff told his priest, Defendant John Doe, at Defendant Saint Mary's Catholic Church Gloucester City and affiliated with Defendant Roman Catholic Diocese of Camden, that Defendants J.O. and W.V. were physically and sexually abusing Plaintiff. Upon information and belief, nothing was done in response to the allegations.

28. The sexual and physical abuse of Plaintiff continued until approximately 2001, when Plaintiff was visiting his father, and father suspected Plaintiff was being neglected and abused.

29. In or around 2001 to 2002, Plaintiff's father was awarded full custody of Plaintiff and his younger brother, and Plaintiff moved to Pennsylvania to live with his father.

30. After Plaintiff moved to Pennsylvania to live with his father, Plaintiff sought mental health treatment with Dr. Philip M. Stein as a result of the repeated physical, sexual, and emotional abuse inflicted upon plaintiff by Defendants.

31. Dr. Stein testified before the Court of Common Pleas, Lehigh County, Pennsylvania, Civil Division – Law Division. According to Dr. Stein, W.M. did not want to return to his mother's home because of the abuse and that W.M. feared for his safety. Dr. Stein further testified that the allegations of abuse included that things

were inserted into W.M.'s rectum and that the children's private parts were "hit with hammers." Attached as Exhibit "A" is a true copy of the redacted transcript from Dr. Stein's testimony taken on January 17, 2003.

32.     As a result of Dr. Stein's testimony, J.O. was only permitted limited supervised visitation. Attached as Exhibit "B" is a true copy of the redacted custody hearing officer's decision limiting J.O.'s visits with W.M. and E.M. dated February 12, 2003.

33.     The Court accepted the recommendation of the custody officer, and entered an Order dated May 28, 2003. Attached as Exhibit "C" is a true copy of the redacted custody Order.

34.     The limited visitation was continued by Court Order dated May 6, 2013. Attached as Exhibit "D" is a true copy of the redacted Order. Since entry of that Order, W.M. has only had supervised limitation with J.O., which continued until W.M. reached the age of majority, and he was able to make the choice not to see J.O. due to this past child sexual abuse.

35.     As a direct and proximate result of the repeated sexual batteries upon the Plaintiff by Defendants J.O. and W.V., the Plaintiff suffered imminent apprehension of conduct of a sort that disgusted him on life, had suffered greatly in his mental health, strength and activity, injury to his body and shock to his nervous system, all of which injuries have caused and will continue in the future to cause

Plaintiff great mental and physical and nervous pain and suffering an emotional distress, all to Plaintiff's extreme damage.

36.     As a further, direct and proximate result of the repeated sexual batteries by Defendants J.O. and W.V., along with the refusal, neglect, or failure by other Defendants to investigate and protect Plaintiff, Plaintiff was required to and did and will incur significant medical and incidental expenses.

37.     On or about August 15, 2021, E.M. tragically took his own life.

38.     At the time of his death, his biological mother, Defendant J.O., was the default beneficiary to his life insurance policy issued by Prudential Life Insurance Company, who was to receive fifty percent of the policy's gross pay-out.

39.     It is plaintiff's position that Defendant J.O. is not entitled to the proceeds of the life insurance policy she was or will be paid as a result of her abuse of her children and such monies unjustly enrich her.

### Count One

### (Leave to Proceed with Initials and File Under Seal)

40.     Plaintiff repeats and restates the allegations of all the preceding paragraphs as if set forth at length herein.

41.     Plaintiff's claim involves sexual abuse that occurred when he was a minor.

42.     Both Plaintiff and the individual defendants should be permitted leave to appear in the public record with initials.

9

43.     Plaintiff and the individual Defendant J.O. are son and mother. Accordingly, if Defendant J.O. is named in the publicly filed Complaint then Plaintiff W.M.'s identity will be easily discoverable from the pleadings.

44.     The New Jersey Legislature required both victim and defendant to appear by way of initials in court proceedings N.J.S.A. 2A:61B-1.

45.     Under New Jersey's Constitution, the Legislature has created substantive law as procedural rules are reserved for the Court. N.J. Const. art. VI, § 2, ¶ 3; Winberry v. Salisbury, 5 N.J. 240, 255, cert. den., 340 U.S. 877 (1950).

46.     Plaintiff W.M. has a sufficient fear that if his identity will be disclosed it will effect his reputation within the United States military, where he is currently enlisted.   The effect may change how his co-workers treat him or affect the assignments he may be given.

47.     If the request is denied, Plaintiff will not be able to pursue this remedy in this forum because of the need to keep his status as a survivor of childhood sexual abuse confidential.

48.     Plaintiff does not have any illegitimate or ulterior motive to proceed confidentiality; his desire is consistent with the New Jersey Legislature's recognition that childhood sexual abuse survivors should be able to proceed to litigate their claims of abuse confidentially.

49.     Accordingly, because of the nature of the allegations, this Court should grant leave for the individual parties to proceed with initials.

**WHEREFORE**, Plaintiff and the individual Defendants are entitled to proceed in public filings with initials.

### Count Two

**(By Plaintiff Against J.O., Estate of W.V., Estate of H.V., John Doe, Saint Mary's Catholic Church Gloucester City, and the Roman Catholic Diocese of Camden For Statutory Claim Under New Jersey Child Sexual Abuse Statute)**

50.    Plaintiff repeats and restates the allegations of all the preceding paragraphs as if set forth at length herein.

51.    Under N.J.S.A. 2A:61B-1, "Action for Sexual Abuse," New Jersey provides a statutory cause of action to supplement common law causes of action for child sexual abuse.

52.    Under the New Jersey Child Sexual Abuse Statute, not only are the physical abusers themselves liable for the greater of statutory or actual damages, with actual damages including compensatory and punitive damages and cost of suit (compensatory damages including pain and suffering, medical expenses, emotional trauma, diminished childhood, diminished enjoyment of life, costs of counseling, and lost wages), together with reasonable attorney's fees, but the same, primary liability attaches to any "person standing in loco parentis who knowingly permits or acquiesces in sexual abuse by any other persons." Such persons, known as passive abusers, are also deemed to have committed sexual abuse upon a child.

53.    J.O. and H.V. engaged in physical and sexual abuse of Plaintiff while he was a minor.

54.     J.O., H.V., W.V., John Doe, Saint Mary's Catholic Church Gloucester City, and the Roman Catholic Diocese of Camden were aware of the physical, sexual abuse of W.M. but failed to take actions to prevent it.

55.     In New Jersey, such persons standing in loco parentis to the abused child need not be natural persons, and they may include institutions and/or corporations.

56.     At all relevant times, Defendants J.O., W.V., and H.V. acted in *loco parentis* to Plaintiff and resided in the same household as Plaintiff while the abuse occurred.

57.     Defendants J.O., the Estate of W.V., the Estate of H.V., John Doe, Saint Mary's Catholic Church Gloucester City, and the Roman Catholic Diocese of Camden are each liable to Plaintiff under the New Jersey Child Sexual Abuse Statute for statutory sexual abuse, for having knowingly permitted and/or acquiesced in the ongoing sexual abuse by J.O. and W.V. of Plaintiff when he was a child.

58.     As a direct and proximately result of the willfulness, negligence, and carelessness of Defendants, Plaintiff sustained severe and permanent injuries, including but not limited to pain, suffering, emotional and psychological trauma, physical trauma, and humiliation.

**WHEREFORE**, Plaintiff demands judgment against Defendants J.O., Estate of H.V., Estate of W.V., Saint Mary's Catholic Church Gloucester City, the Roman Catholic Diocese of Camden, and John Doe, jointly and severally, or in the

alternative for damages, punitive damages, interests, costs of suit, attorney's fees, and such other relief as the Court deems fair and equitable.

## Count Three

### (By Plaintiff Against Defendants J.O. and Estate of W.V. for Sexual Abuse/Battery)

59.     Plaintiff repeats and restates the allegations of all the preceding paragraphs as if set forth at length herein.

60.     In the County of Camden, New Jersey, Defendants J.O. and W.V. repeatedly committed sexual abuse/battery against Plaintiff as described within the above complaint.

61.     Defendants J.O. and W.V. committed sexual abuse and battery upon Plaintiff in Defendant H.V.'s house while Defendants J.O., W.V., and H.V. were residing in said household.

62.     As a direct and proximate result of the repeated batteries upon Plaintiff, he has suffered injuries to his health, strength and activity, injury to his body and shock and injury to his nervous system, all of which injuries have caused and will continue to cause Plaintiff great mental, physical, and nervous pain and suffering, and emotional distress all to the Plaintiff's damage.

**WHEREFORE**, Plaintiff demands judgment against Defendants J.O. and W.V. jointly and severally, or in the alternative for damages, punitive damages,

13

interests, costs of suit, attorney's fees, and such other relief as the Court deems fair and equitable.

## Count Four

**(By Plaintiff Against Defendants J.O., Estate of W.V., and Estate of H.V. for Negligent and Intentional Infliction of Emotional Distress)**

63.     Plaintiff repeats and restates the allegations of all the preceding paragraphs as if set forth at length herein.

64.     Defendants J.O., H.V., and W.V. engaged in extreme and outrageous conduct that shocked the conscious.

65.     Defendants J.O., H.V., and W.V. acted negligently, willfully, and intentionally in the executing the extreme, outrageous conduct that included inserting or letting another person insert items into W.M.'s rectum when he was a powerless child; requiring W.M. to watch his mother and uncle fornicate; and failing to stop sexual, emotional, and physical abuse of W.M.

66.     These Defendants' conduct, either singly or in concert, proximately caused W.M. to suffer from extreme emotional distress that continues to haunt him to this day.

**WHEREFORE**, Plaintiff demands judgment against Defendants J.O., Estate of H.V., and Estate of W.V., jointly and severally, or in the alternative for damages, punitive damages, interests, costs of suit, attorney's fees, and such other relief as the Court deems fair and equitable.

## Count Five

**(By Plaintiff Against Defendants J.O., Estate of W.V., Estate of H.V., John Doe, Saint Mary's Catholic Church Gloucester City, and the Roman Catholic Diocese of Camden for Negligence and Gross Negligence)**

67.     Plaintiff repeats and restates the allegations of all the preceding paragraphs as if set forth at length herein.

68.     Defendants J.O., W.V., H.V., John Doe, Saint Mary's Catholic Church Gloucester City, and the Roman Catholic Diocese of Camden owed Plaintiff a duty to use reasonable care to ensure the safety and well-being of each youth who attended and were parishioners of the church.

69.     Upon information and belief, Defendants John Doe, Saint Mary's Catholic Church Gloucester City, and the Roman Catholic Diocese of Camden had or should have had actual and/or constructive knowledge that Defendants J.O. and W.V. were sexually abusing Plaintiff.

70.     Defendants John Doe, Saint Mary's Catholic Church Gloucester City, and the Roman Catholic Diocese of Camden took no steps to prevent or stop the sexual abuse of Plaintiff, and acted with a want or absence of slight care or diligence, and/or failed to exercise slight care or diligence to ensure the safety of its youth parishioners when Plaintiff alerted John Doe that his mother and uncle were sexually and physically abusing Plaintiff.

71.     Among other things, Defendants John Doe, Saint Mary's Catholic Church Gloucester City, and the Roman Catholic Diocese of Camden acted grossly negligent and/ or willfully in refusing to and/or failing to report the allegations of abuse upon Plaintiff by his mother and uncle, all of which were parishioners at Saint Mary's Catholic Church Gloucester City during the relevant time period.

72.     Defendants John Doe, Saint Mary's Catholic Church Gloucester City, and the Roman Catholic Diocese of Camden had a duty as mandatory reporters under New Jersey law to report child abuse. N.J.S.A 9:6-8.10("Reports of Child Abuse") states: "Any person having reasonable cause to believe that a child has been subjected to child abuse, including sexual abuse, or acts of child abuse shall report the same immediately to the Division of Child protection and Permanency by telephone or otherwise." Yet Defendants failed to report the abuse as required, thus breaching their duty of care.

73.     In New Jersey, which maintains a strong policy interest in protecting children from sexual abuse, the fact that statutory law requires any person to report suspected sexual abuse of children creates a duty, that when breached, can give rise to a common law action of negligence.

**WHEREFORE**, Plaintiff demands judgment against Defendants John Doe, Saint Mary's Catholic Church Gloucester City, and the Roman Catholic Diocese of Camden jointly and severally, or in the alternative for damages, punitive damages,

interests, costs of suit, attorney's fees, and such other relief as the Court deems fair and equitable.

## Count Six

### (Collateral Estoppel / Claim Preclusion / Res Judicata)

74.    Plaintiff repeats and restates the allegations of all the preceding paragraphs as if set forth at length herein.

75.    The Pennsylvania Court of Common Pleas has made findings substantiating the sexual abuse by J.O.  See Exhibits A through D.

76.    Plaintiff through his father and Defendant J.O. litigated whether sexual abuse occurred.

77.    Pennsylvania entered a final Order for the sufficiency of the allegations. See Exhibit C.

78.    The sufficiency of the abuse was a material factor to the judgment limiting J.O. requiring supervision for all visitation with her sons, including W.M.

79.    Defendant J.O. was the party litigating the issue of the abuse in the Pennsylvania matter.  See Exhibits A through D.

**WHEREFORE**, Plaintiff demands entry of an Order finding under collateral estoppel and issue preclusion, that Defendant J.O. did permit W.M. to be sexually abused.

## Count Seven

**(By Plaintiff Seeking Writ of *Capias ad Respondendum* Against Defendant J.O.)**

80.    Plaintiff repeats and restates the allegations of all the preceding paragraphs as if set forth at length herein.

81.    The Pennsylvania Court of Common Pleas has made findings substantiating the sexual abuse by J.O.  See Exhibits A through D.  Thus, Plaintiff has demonstrated a likelihood of success on the merits.

82.    Defendant J.O. treated her child, Plaintiff W.M., with malice by engaging in acts including but not limited to: 1) placing items in his rectum for her own sexual gratification, 2) subjecting him to witnessing repeated acts of incestuous sexual intercourse between J.O. and her brother, W.V., 3) requiring W.M. to be naked in bed with his mother, J.O.; 4) exposing W.M. to repeated acts of sexual and physical abuse by his uncle, W.V. and failing to take action to prevent continued abuse and violence.  As a result of this extreme and outrageous conduct, W.M. has been permanently harmed emotionally.

83.    Defendant J.O.'s actions constitute outrageous battery and mayhem against her son, W.M.

84.    Defendant J.O. is a resident of the State of New York and thus, a summons cannot be served upon her within the State of New Jersey.

85.    Defendant J.O. has assets located in the State of New Jersey, specifically including a bank account at Citizens Bank with branches located in Camden County, New Jersey.

86.    W.M.'s younger brother, E.M., similarly suffered physical, sexual, and mental abuse by J.O. and W.V. E.M.  committed suicide on or about August 15, 2021.

87.    At the time of his death, E.M. had a life insurance policy through Prudential Insurance Company, a New Jersey company.

88.    Upon information and belief, upon E.M.'s death, defendant J.O. received a fifty percent the benefit of that life insurance policy, in the amount of $200,000.

**WHEREFORE**, Plaintiff demands entry of an ex parte writ of *capias ad respondendum* pursuant to F.R.C.P. 64(a) and N.J.S.A. 2A:15-41 requiring Defendant J.O. to appear in New Jersey and post bail.

### Count Eight

**(By Plaintiff Seeking Writ of Attachment Against Defendant J.O.)**

89.    Plaintiff repeats and restates the allegations of all the preceding paragraphs as if set forth at length herein.

90.    As set forth herein, J.O.'s actions towards her then-minor son, W.M. constituted extreme and outrageous torts.

91.    The Pennsylvania Court of Common Pleas has made findings substantiating the sexual abuse by J.O.  See Exhibits A through D.  Thus, Plaintiff has demonstrated a likelihood of success on the merits.

92.    Defendant J.O. is a resident of the State of New York and thus, a summons cannot be served upon her within the State of New Jersey.

93.    Defendant J.O. has assets located in the State of New Jersey, specifically including a bank account at Citizens Bank with branches located in Camden County, New Jersey.

94.    Defendant J.O. has an interest as a beneficiary of life insurance for E.M., who died in August 2021.  To the extent Prudential Life Insurance Company has not yet issued the funds, an Order should be entered requiring the deposit of the monies into Court.

95.    Pursuant to N.J.S.A. 2A:26-1, Plaintiff is entitled to a writ of attachment to secure payment of a judgment as a protection for him against a non-resident creditor.

96.    Plaintiff seeks entry of the Order ex parte because if notice if granted to Defendant J.O., she will remove the assets from New Jersey prior to entry of the writ of attachment.

**WHEREFORE**, Plaintiff demands entry of an ex parte writ of attachment against any and all property that Defendant J.O. has located in New Jersey, including

monies located at Citizens Bank in Camden County, New Jersey, and the deposit into court of life insurance proceeds to be issued to Defendant J.O. by Prudential Life Insurance Company located in Essex County, New Jersey.

**LOMURRO, MUNSON, COMER, BROWN & SCHOTTLAND, LLC**
Attorneys for Plaintiffs


By: _____
CHRISTINA VASSILIOU HARVEY, ESQ.

Dated: 6/10/22

### Verification of Other Causes of Action Pursuant to F.R.C.P. 11.2

I am an attorney at law in the State of New Jersey and I hereby declare under penalty of perjury that there is no other cause of action pending involving these claims.

I DECLARE under penalty of perjury under the laws of the United States of America that the foregoing information contained in the is true and correct.


Executed on June 10, 2022
By: _____
CHRISTINA VASSILIOU HARVEY, ESQ.


### VERIFICATION

I, W.M., am the Plaintiff named in this Complaint. As such, I am familiar with the issues in the attached Complaint, and I am authorized to make this Verification. I have read the allegations contained in this Complaint, and they are true based upon

my personal knowledge except as to those allegations based upon information supported by the documents attached to the complaint.  As to the former allegations, I believe them to be true based on information available to me.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the Complaint is true and correct. Executed on this 9ᵗʰ day of June 2022

By:_____WM_____
W.M.

EXHIBIT A

97-FC-895

**FILED**

June 6 2003 @ 12:56
CLERK OF COURTS - CIVIL DIV.
LEHIGH COUNTY, PA

[signature]
& CLERK OF COURTS - CIVIL DIV.

Telephone Testimony of Dr. Philip Stein - January 17, 2003
Conference before Custody Master Nancy A. Longenbach

| | |
|---|---|
| **Master Longenbach:** | ...turn it on so Attorney Sonne, go ahead. |
| **Atty. Sonne:** | Dr. Stein, you were previously qualified as an expert in this case by Dr. Gardner... Judge Gardner, were you not? |
| **Dr. Stein:** | Yes. |
| **Atty. Sonne:** | And you testified at length in this matter...oh... some time ago, did you not. |
| **Dr. Stein:** | Yes, several months ago. |
| **Atty. Sonne:** | O.k.  You have been treating one of the children in this matter for quite some time.  Is that correct? |
| **Dr. Stein:** | That's correct. |
| **Atty. Sonne:** | Which child? |
| **Dr. Stein:** | W███ ██ M███ |
| **Atty. Sonne:** | Ok.  And how long has he been in therapy with you? |
| **Dr. Stein:** | I have been seeing ██ ... let me look back through my records here...it's been awhile...the first session was the...with the parents the 18th of January of 2000, but we didn't get started with ██ until 5th of January of 2001. |
| **Atty. Sonne:** | And when was your most recent session with ██? |
| **Dr. Stein:** | December 16, 2002 so about a month ago. |
| **Atty. Sonne:** | O.k.  About how frequently do you see him on the average? |
| **Dr. Stein:** | Well we're meeting now a little less frequently as needed.  It works out to about once or twice a month. |

*Dr. Stein's testimony*
Page 2

**Atty. Sonne:** O.k.  Are you aware that mother has filed a petition to reinstate unsupervised visits at her home in New Jersey?

**Dr. Stein:** I was informed of that, yes.

**Atty. Sonne:** O.k.  And based upon your therapy with ▮ do you have an opinion to a reasonable degree of certainty as to whether that would be appropriate or inappropriate?

**Dr. Stein:** Yes I do have an opinion.

**Atty Sonne:** Could you please state that opinion and give your reasons?

**Dr. Stein:** I'd be happy to.  Ah, I met with ▮ on the 16th of December as I said, 2002, informed by Father that this petition was going to be happening.  I talked with ▮ individually during that session and, ah, asked him about visits with his mom, how they were going and how he would feel about an overnight unsupervised visit with his mom in her home.  Ah, you know when I left the room to talk with his father, we were talking about this and I came back, ▮ had written, on his own, on the board I have here, the dry erase board quote "I don't want ▮ to bring me to that house when Uncle ▮ there" and he put four quotes on that, ah, four quotation, I'm sorry ... four exclamation points at the end of that sentence.  And I asked him why and he said "cause I'm not safe there because he's going to abuse me like before"  I asked him further about some of this ...but anyway...let me give you my opinion...in my opinion it would be ...outside of what ▮ was saying ... he's reiterated this on several sessions before this... it would be damaging, it would be tramatic, it would be a major setback to ▮ with an almost absolute certainty in my professional opinion to his psychological health ...he would be setback so much ... and the whole key word here is safety ...he does not feel safe there.  He underwent ... he described in detail incidences of abuse and physical threat and physical harm.  We'd see a tremendous regression on his part if unsupervised visits were to happen there... I think we'd be seeing...I hope I'm not talking too much here but...  I think we'd be seeing increased anxiety ... feelings of...tremendous feelings of untrust in the world and a lack of safety...we'd be seeing increased noncompliance at home and at school...increased bedwetting...increased lying ...increased aggression with other kids...increased attention...inattention and carelessness at school in learning problems...increased disruptiveness...I think he might even refuse to go on visits ... ah...he possibly would put himself at harm trying not to go ...I've seen kids who would try to get out of running cars ... I think we



*Dr. Stein's testimony*
*Page 3*

would see increased nightmares... I just think his whole psychological state would be effected were he forced to visit his mom in this way.

**Atty. Sonne:** O.k.  Do you have an opinion as to whether or not the visits should stay the way there are currently which is supervised at Pinebrook?

**Dr. Stein:** Well, I don't... you know... I talked with ▮▮▮ ... I asked him if he would be open to lengthening the time of his visit with his mom and he was open to that...I think he would be open to a longer visit a supervised visit in that safe atmosphere, but I do not think an overnight visit in any way would be safe for him ... he would feel safe right now.  And I'm even o.k. if you want to lengthen that and see how he does... ah ... perhaps even more frequently ... what is it ... once a month now?

**Atty. Sonne:** I believe it's every two weeks.

**Dr. Stein:** Every two weeks?

**Atty. Sonne:** Yes.

**Dr. Stein:** I mean...you could start with a lenghtened visit and see how that goes and just work from there in a step-wise fashion ... that's, yeah, that my opinion.

**Atty. Sonne:** O.k. I don't think I have anything further.

**Master Longenbach:** Alright. Mr. Banta.

**Atty. Banta:** Dr. Stein, you...I believe that the Court Order requires that you visit with William following each visit with his mother...isn't that correct?

**Dr. Stein:** I believe that was in the Court Order.  Yes.

**Atty. Banta:** And did you do so?

**Dr. Stein:** Well we've been visiting less frequently because of ...he had been doing better... we wanted to see how he was doing...um ...

**Atty. Banta:** So, in essence, you haven't followed the Court Order.

**Dr. Stein:** Well, I'm doing what I think is necessary for ▮▮▮ to get the kind of...

**Atty. Banta:** Please answer the question.

*Dr. Stein's testimony*
*Page 4*

Dr. Stein:          If that is the Court Order, then I guess that's the case.  Yes.  I mean, I would see him ... we'd been seeing each other monthly but I see him as needed.

Atty. Banta:        During the hearing that you participated in there were some pretty outlandish descriptions of the abuse ... have you heard anything that was more reasonable since you've been seeing him?

Atty. Sonne:        Well, I object to the char... to the wording... Judge Gardner made a decision...and

Master Longenbach: More reasonable abuse?  Is that what your suggesting?

Atty. Banta:        Well, no...

Atty. Sonne:        Judge Gardner made a decision based on the testimony...

Atty. Banta:        Frankly...

Atty. Sonne:        ...and that decision was made.

Atty. Banta:        Frankly, Dr. Stein...

Master Longenbach: Could you rephrase your question Mr. Banta?

Atty. Banta:        O.k.  Fine.  Dr. Stein, during the time of that hearing there were allegations raised that were physically impossible, isn't that correct?

Atty. Sonne:        I object to that question.  That is your conclusion.  Counsel is testifying.

Master Longenbach: Overruled.  He can ask Dr. Stein the question.

Atty. Banta:        The question is...Dr. Stein...physically, it was impossible to do some of the things that were...were claimed.  Isn't that correct?

Master Longenbach: Well you're going to need to be more specific.

Atty. Banta:        O.k.  Specifically, as I recall the children had claimed that they had knives, forks, spoons, cups and saucers pushed up their rearend.  Isn't that correct?

Atty. Sonne:        I object because I do not recall that that's what the testimony was ... I do not recall anything like cups or...

*Dr. Stein's testimony*
*Page 5*

| | |
|---|---|
| Master Longenbach: | Well, Dr. Stein was there... |
| Atty. Sonne: | Ask him if he remembers his testimony... that would be the correct question... |
| Master Longenbach: | Right. |
| Atty. Banta: | Do you recall that? |
| Dr. Stein: | You know...it's been such a long time ago, I mean I can look back through my records but, ah, there were...there was talk about things being inserted in their rectum ... I don't remember exactly what but there was talk about that. Yes. |
| Master Longenbach: | Alright, Mr. Banta, unless you've got a transcript... |
| Atty. Banta: | There was also testimony, was there not that the private parts of the children were hit with hammers, isn't that correct? |
| Master Longenbach: | If he remembers...if you don't have a transcript, I'm not going to make him... |
| Atty. Sonne: | There was no transcript. |
| Master Longenbach: | Well he could have gotten one, I mean I'm not going to ... |
| Atty. Sonne: | I'm not aware that there's a transcript. |
| Master Longenbach: | I said he could have had one...done... |
| Atty. Banta: | I don't remember exactly. |
| Master Longenbach: | I'm not going to make Dr. Stein rely on his memory for a trial ... |
| Atty. Banta: | I'm not going to ask him to rely on his memory...I have the notes of his testimony right here. |
| Atty. Sonne: | It's your notes... |
| Atty. Banta: | That's correct... |
| Atty. Sonne: | You don't have a transcript of the hearing is the question. |

*Dr. Stein's testimony*
*Page 6*

| | |
|---|---|
| Atty. Banta: | Some of these are quotes from Dr. Stein ... |
| Master Longenbach: | Well, then...oh...alright then...well then... |
| Atty. Banta: | Uncle ▓ kicks me in my private parts ... didn't ▓ say that? |
| Dr. Stein: | Yes he did. I do remember that. |
| Atty. Banta: | I'm just looking through my notes because I want to make certain that I quote the testimony correctly. Have they stuck to, or has ▓ stuck to the same story since then? |
| Dr. Stein: | Well, you know...the therapy...as we get close to some of the details...you know...sometimes we'll go back and talk about what happened again. What has happened is as we get close to talking about previous incidences that ▓ described well see in subsequent sessions a regression ... a kind of a ... more acting out...more noncompliant... more bedwetting and ... as we discuss those more in detail so what we've...in some ways what we're trying to do is help ▓ move on and, ah, so the details now are not as detailed... ▓ doesn't really want to get into some of the details as much. |
| Atty. Banta: | So you really haven't addressed those things at all during the past year and a half? |
| Atty. Sonne: | That's not what he said. |
| Dr. Stein: | Well, we have addressed them... we have talked about it...but as we get into it...you can see how ▓ closes up...he gets very hyper in the room...he runs all around...he doesn't want to talk about it. |
| Atty. Banta: | Would you expect that from a child who's told a lie and maybe doesn't want to repeat it? |
| Dr. Stein: | Well, I don't get that sense, I get a sense that ... a child who's very anxious about what happened and would rather just forget it ... would rather move on. |
| Atty. Banta: | Isn't it possible that a child who's lied about it ... he doesn't want to talk about it any more? |
| Dr. Stein: | That's possible but that's not the ... in my opinion... thats ...strong opinion, that's not the sense I'm getting. |

*Dr. Stein's testimony*
*Page 7*

Atty. Banta:          I have no further questions.

Master Longenbach:    Alright, any redirect?

Atty. Sonne:          No.

Master Longenbach:    Is there anything else you want to add Dr. Stein...for any reason?

Dr. Stein:            Ah, I can't think of anything right now.

Master Longenbach:    Alright then thank you very much for being available by phone.

Dr. Stein:            o.k.

Master Longenbach:    Alright, bye.

Dr. Stein:            Bye, bye.

IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA

CIVIL DIVISION - LAW

S█████ T█████ M█████ ) NO. 1997-FC-895
)
**Plaintiff** )
) IN CUSTODY
vs. )
)
J█████ M█████ M█████ )
)
**Defendant** )

### CERTIFICATION OF TRANSCRIPT

I hereby certify that the proceedings, as contained on the tape recording made on January 17, 2003 at the time of conference in the above cause, have been transcribed by me, and that the following is a correct transcript of same.



THERESA M. MILES

I verify that the statements made in the foregoing Certification of Transcript are true and correct. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

THERESA M. MILES

EXHIBIT B

IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA

CIVIL DIVISION



S██████ T████ M████          ) NO. 1997-FC-0895

    Plaintiff                    )

    vs.                          ) CUSTODY

J██ M█████ M█████            )

    Defendant                    )

ORDER

AND NOW, this /2ᵗʰ day of February, 2003, after conference before the Custody Hearing Officer, the Hearing Officer recommends that the following Order be entered:

1. The Petition to Modify filed by the Defendant/Mother on December 3, 2002, is hereby denied.*  The Mother shall continue to exercise supervised visits of the parties' two minor children, W██████ and E██ M██████, at Pinebrook Services for Children and Youth, pursuant to the Order of August 21, 2001, with the modification that the Mother may exercise supervised visits for three hours every two weeks, costs to be borne by the Mother.

2. Any party wishing to take Exception to this Order shall, pursuant to Pa. Rule of Civil Procedure 1915.4-2(g) and Lehigh County Rule 1915.4-2, within ten (10) days of notice of entry of this Order, obtain from the Court Administrator's Office

NOW, 2-12-03
COPIES OF THE WITHIN COURT
ORDER OR DECREE MAILED TO
ALL INTERESTED PARTIES BY

(610-782-3014) a date for the Court to hear the Exceptions, file the Exceptions and a scheduling Order with the Clerk of Courts—Civil Division, and serve copies on opposing counsel or party and the Custody Hearing Office.

Respectfully submitted,

Nancy A. Longenbach, Esquire

NOW, this 12th day of February, 2003, APPROVED AND SO ENTERED.

BY THE COURT:

Alan M. Black                                    J.

---

\* The Mother seeks to Modify the Order of August 21, 2001, granting her supervised visits at Pinebrook Services for Children and Youth because, she alleges, the terms and conditions of the said Order for Modification have been met. The Order states: "IT IS FURTHER ORDERED that in the event that DYFS concludes that the allegations of abuse are 'unfounded' and the Camden County, New Jersey, prosecutor declines to prosecute, or a prosecution results in an acquittal of defendant and W████ V████, and upon petition of either party, all periods of partial custody missed by Mother on or after June 22, 2001, as a result of the within allegations of abuse shall be made up to Mother in a manner agreed to by the parties, or in the absence of agreement, as determined by the court." It is undisputed that the Department of Human Services, Division of Family Services, State of New Jersey, wrote to the Lehigh County Court on March 20, 2002, terminating its involvement with the two children "based on the following: Both children are currently safe residing with their Father S████ M████ out of the State of New Jersey. The Division is also informed that both children are receiving appropriate counseling through Dr. Stein." Unfortunately, the New Jersey Division of Youth and Family Services has failed to file any results of its investigation, either "indicated" or

"unfounded" The Mother argues that since the New Jersey case is closed she should now exercise unsupervised partial physical custody pursuant to the Order of December 27, 2000, which provided that the Mother would exercise partial physical custody on alternating weekends from Saturday at 10:00 a.m. until Sunday at 5:00 p.m. and during the summer from Friday at 6:00 p.m. until Sunday at 7:00 p.m. The undersigned cannot conclude that the conditions set forth in the Order of August 21, 2001, have been met. DYFS has not concluded that the allegations of abuse were "unfounded" and it appears that the Camden County, New Jersey, prosecutor has not declined to prosecute, nor has a prosecution resulted in an acquittal. The Father alleges that he has been advised by New Jersey that the case could be reopened at any time and that the failure of New Jersey to prosecute was based upon concern for the welfare of the children.

EXHIBIT C

IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA

CIVIL DIVISION



S█████ T█████ M█████                        ) NO. 1997-FC-0895

      Plaintiff                                    )

      vs.                                          ) CUSTODY

J█████ M█████ M█████                        )

      Defendant                                    )

ORDER

AND NOW, this 28th day of May, 2003, after record hearing before the Custody Hearing Officer, the Hearing Officer recommends that the following Order be entered:

1. The provisions of the recommended Order of February 12, 2003, shall continue in full force and effect.

2. Counsel for the parties agree that the transcripts prepared by the office of Frances Sonne, Esquire, of the testimony of Dr. Philip Stein on January 17, 2003, and the testimony of the parties on May 22, 2003, shall be filed with the Clerk of Courts—Civil Division and be made a part of the record of this matter.

3. Any party wishing to take Exception to this Order shall, pursuant to Pa. Rule of Civil Procedure 1915.4-2(g) and Lehigh County Rule 1915.4-2, within ten (10) days of notice of entry of this Order, obtain from the Court Administrator's Office (610-782-3014) a date for the Court to hear the Exceptions, file the Exceptions and a scheduling Order with



the Clerk of Courts—Civil Division, and serve copies on opposing counsel or party and the Custody Hearing Office.

Respectfully submitted,

Nancy A. Longenbach, Esquire

NOW, this 28th day of May, 2003, APPROVED AND SO ENTERED.

BY THE COURT:

Alan M. Black, J.

2

EXHIBIT D

CUSAFO



IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY PENNSYLVANIA
CIVIL DIVISION

S███████ T██████ M██████,          )
        Plaintiff          )          NO. 1997-FC-0895
    vs          )          CUSTODY
J███ M███ M██████,          )          ASSIGNED JUDGE:
        Defendant          )

## ORDER

AND NOW, this 6th day of May, 2013, upon consideration of the Notice of Intention to Relocate filed on February 5, 2013 and the Petition for Modification filed on March 13, 2013 by Plaintiff, S███████ T██████ M██████, and the Objection to Notice of Relocation filed on February 19, 2013 by Defendant, J███ M███ M██████, and after a Hearing before the Custody Hearing Officer, Donald L. VanGilder, on May 2, 2013, attended by S███████ T██████ M██████, Plaintiff, hereinafter referred to as "Father", represented by Frances G. Sonne, Esquire, and by J███ M███ M██████ Defendant, hereinafter referred to as "Mother", represented by Robert L. Sharpe, Jr., Esquire, in regard to the parties' minor child, E██ M. M██████ born March 4, 1997, and upon agreement of the parties, the Custody Hearing Officer recommends the following Order be entered:

1. Father's relocation with the minor child to the state of Texas is allowed.

2. Mother shall have partial physical custody of the minor child on six occasions each year with each occasion consisting of two, two hour times of supervised partial custody on consecutive days. These times of partial custody shall occur in the vicinity of Camden County, PA. There shall be four such times of partial custody occurring in the balance of 2013: once in June, once in August, once

1997-FC-0895

during the Thanksgiving holiday school break, and once during the Christmas holiday school break.  In 2014, the times of partial custody shall occur during the spring school break, during Memorial Day weekend, in July, in August, during the Thanksgiving holiday school break, and during the Christmas holiday school break.

3. Mother's times of partial custody shall be supervised by an agreed upon supervisor and the precise days shall be scheduled so as to coordinate the schedules of the parents, the child, and the supervisor.  The days of the supervised physical custody shall, if possible, be arranged to occur on weekends and the supervision may occur at an agency location or with a supervisor accompanying Mother and the minor child in the community.

4. Mother shall be responsible for $35 of the cost on the occasion of each of the days of her supervised partial custody and Father shall be responsible for the balance of the cost.  Father shall also be responsible for the expense of airline travel to and from New Jersey for the times of Mother's physical custody except that Mother shall reimburse Father the sum of $250 towards the expense of the travel for the Christmas time custody in 2013 and in 2014.  If no other arrangements are made for this payment to occur, Mother may send this sum along with the minor child when he returns to Texas from the time of custody.

5. Mother's entitlement to have telephone conversations with the minor child shall continue as in previous orders, however, the precise scheduling of the conversations shall no longer be necessary.  Mother's calls to the minor child

1997-FC-0895

CUSAFO

should not be more frequent than one time each calendar week.  The minor child may call Mother whenever he chooses to do so.  If the should be unavailable to receive a call from Mother, it shall be Father's obligation to make certain that he returns the call to her as promptly as is possible.

6.  Except as herein modified, the prior Orders in this matter shall continue to be in full force and effect.

Respectfully Submitted:

Donald L. VanGilder, Esquire
Custody Hearing Officer

Now, this _6th_ day of May, 2013, approved and so Ordered.

BY THE COURT:

Michele A. Varricchio,     J.

DLV/alk

3                                        1997-FC-0895

IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
CIVIL COURT DIVISION

## Document Distribution List

File No.: 1997-FC-0895                                             5/7/2013

| | |
|---|---|
| Charles A Banta, Esq | 4712 Hilton Road<br>Schnecksville PA  18078-2319 |
| Eric Kraeutler, Esq | 1701 Market Street<br>Philadelphia PA  19103 |
| E█ M█ | No Known Address |
| Robert L Sharpe, Jr Esq | Suite 260<br>4949 Liberty Lane<br>Post Office Box 3088<br>Allentown PA  18106 |
| Frances G Sonne, Esq | 461 Linden Street<br>Allentown PA  18102 |
| Nancy P Wallitsch, Esq | Roma Corporate Center<br>Suite 516<br>1605 North Cedar Crest Boulevard<br>Allentown PA  18104 |



#15108 225 Fluorland Dr
Sugarland TX

<u>236 NOTICE</u>

Pursuant to Pa.R.C.P. § 236, notice is hereby given that an order, decree, or judgment in

the above captioned matter has been entered.

CttO

30 Snowberry Rd
Ballston Spa NY 12020

Andrea E. Naugle
Clerk of Judicial Records

CV15d