| | |
|---|---|
| W.M.;<br><br>Plaintiff,<br><br>vs.<br><br>J.O. f/n/a J.M.; Estate of H.V.; Estate of W.V.; SAINT MARY'S CATHOLIC CHURCH GLOUCESTER CITY; ROMAN CATHOLIC DIOCESE OF CAMDEN; PRUDENTIAL INSURANCE COMPANY OF AMERICA; and JOHN DOE, a fictitious party;<br><br>Defendants. | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY<br>DOCKET NO.:<br><br><u>CIVIL ACTION</u> |

BRIEF IN SUPPORT OF ORDER TO SHOW CAUSE SEEKING ENTRY OF *EX PARTE* SEEKING PERMISSION TO PROCEED WITH FICTITIOUS NAMES AND ENTRY OF WRITS OF *CAPIAS AD RESPONDENDUM* AND ATTACHMENT

LOMURRO, MUNSON, COMER, BROWN & SCHOTTLAND, LLC
4 Paragon Way, Suite 100
Freehold, New Jersey 07728
(732) 414-0300
Attorney for Plaintiff, W.M.

CHRISTINA VASSILIOU HARVEY, ESQ., **ATTORNEY ID NO.: 023642004**
charvey@lomurrolaw.com
Of Counsel and On the brief

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... ii

PRELIMINARY STATEMENT ...................................................................... 1

STATEMENT OF FACTS ............................................................................. 1

PROCEDURAL HISTORY ............................................................................ 3

LEGAL ARGUMENT .................................................................................... 4

POINT ONE
    Plaintiff and Individually Named Defendants Should Be Able to
    Proceed By Way of Initials. ..................................................................... 4

POINT TWO
    This Court Should Issue a Writ of Capias ad Respondendum In Order
    to Compel Non-Resident Defendant J.O. to Participate in this
    Litigation. ................................................................................................ 7

POINT THREE

    Entry of a Writ of Attachment Is Appropriate in This Matter. ................. 10

POINT FOUR

    The Temporary Restraints Should Be Issued on an Ex Parte Basis So
    As Not to Cause Irreparable Injury. .......................................................... 14

CONCLUSION ............................................................................................. 19

# TABLE OF AUTHORITIES

Page(s)

Cases

Carlini v. Velez,
    947 F. Supp. 2d 482 (D.N.J. 2013) ........................................................................ 17

Country Floors, Inc., v. Gepner,
    930 F.2d 1056 (3d Cir. 1991) ................................................................................ 15

Crowe v. DeGoia,
    90 N.J. 126 (1982) ........................................................................................... 15, 16

Doe v. Coll. of New Jersey,
    997 F.3d 489 (3d Cir. 2021) .................................................................................... 6

Doe v. Megless,
    654 F.3d 404 (3d Cir. 2011) ................................................................................. 5, 6

Doe v. Oshrin,
    299 F.R.D. 100 (D.N.J. 2014) ................................................................................. 5

Doe v. Uhler,
    220 N.J. Super. 522 (Law Div. 1987).............................................................. passim

Eli Lilly & Co. v. Premo Pharm. Labs., Inc.,
    630 F2d 120 (3d Cir. 1980) ................................................................................... 15

Fravega v. Security Sav. & Loan Ass'n,
    192 N.J. Super. 213 (Ch. Div.1983) ...................................................................... 16

Highmark, Inc. v. UPMC Health Plan, Inc.,
    276 F.3d 160 (3d Cir. 2001) .................................................................................. 15

Iaria v. Pub. Serv. Mut. Ins. Co.,
    31 N.J. 386 (1960) .................................................................................................. 8

Kryn v. Kahn,
   54 A. 870 (N.J. Sup. Ct. 1903) ........................................................ 8, 9

Marsellis–Warner Corp. v. Rabens,
   51 F.Supp.2d 508 (D.N.J.1999) ........................................................ 14

Messina v. Petroli,
   11 N.J. Misc. 583 (Cir. Ct. 1933) ..................................................... 9, 17

Mueller v. Seaboard Comm'l Corp.,
   5 N.J. 28 (1990) ............................................................................. 11

Opticians Ass'n of Am. v. Indep. Opticians of Am.,
   920 F.2d 187 (3d Cir. 1990) ............................................................ 15

Ortho Pharm. Corp. v. Amgen, Inc.,
   882 F.2d 806 (3d Cir. 1989) ............................................................ 15

Pappan Enters v. Hardee's Foods Sys.,
   143 F.3d 800 (3rd Cir. 1998) ........................................................... 15

Perlmutter v. DeRowe,
   58 N.J. 5 (1971) ......................................................................... 8, 9, 19

S.D. Sales Corp. v. Doltex Fabrics Corp.,
   92 N.J. Super. 586 (Law Div.1966) ................................................. 11

Seiden v. Fishtein,
   44 N.J. Super. 370 (App. Div. 1957) .............................................. 10, 11

Sentry Ins. v. Sky Mgmt., Inc.,
   34 F. Supp. 2d 900 (D.N.J. 1999) ............................................ 11, 13, 16

SI Handling Sys., Inc. v. Heisley,
   753 F.2d 1244 (3d Cir. 1985) .......................................................... 15

T.S.R. v. J.C.,
   288 N.J. Super. 48 (App. Div. 1996) ................................................ 4

Tanner Assoc., Inc. v. Ciraldo,
    33 N.J. 51 (1960) ......................................................................... 13, 18

Tedards v. Auty,
    232 N.J. Super. 541 (App. Div. 1989)................................................. 17

Winberry v. Salisbury,
    5 N.J. 240 ....................................................................................... 5

Wolfson v. Bonello,
    270 N.J. Super. 274 (App. Div. 1994)........................................... 10, 19

Constitution and Statutes

N.J. Const. art. VI, § 2, ¶ 3................................................................. 5

N.J.S.A. 2A:26-1 ............................................................................. 10

N.J.S.A. 2A:26-2 ..................................................................... 10, 12, 17

N.J.S.A. 2A:26–8 ............................................................................. 11

N.J.S.A. 2A:26–2.3 ........................................................................... 12

N.J.S.A. 2A:61B-1 .......................................................................... 4, 6

N.J.S.A. 2A:61B-1(f)(1)...................................................................... 4

N.J.S.A.  2A:26–2.3 ................................................................... 13, 14

N.J.S.A. 2A:15-41 .................................................................... passim

N.J. Pub. L. 1963, c. 73 ...................................................................... 4

28 U.S.C. § 1332 ............................................................................... 3

Rules

Fed. R. Civ. P. 5.2 ......................................................................................... 1

Fed. R. Civ. P. 64 ......................................................................................... 10

Fed. R. Civ. P. 64(a) ....................................................................................... 7

N.J. Ct. R. 4:60-5 ......................................................................................... 18

Other Authorities

6 C.J.S. Arrest § 57, p. 672 ............................................................................. 8

20 N.J. Prac. § 1781 (2d. 1973) ...................................................................... 10

Bruce A. Tritsch, Attachment in New Jersey,

11 Rutgers L. Rev. 714, 714 (1957) ....................................................... 11

## PRELIMINARY STATEMENT

This Order to Show Cause seeks to protect the rights of Plaintiff W.M., who as a child was abused by his mother, J.O. and uncle, W.V., and whose maternal grandfather, H.V. permitted the sexual and physical abuse to continue.  W.M. further requested help from his priest at Saint Mary's Catholic Church Gloucester City within the auspices of the Roman Catholic Diocese of Camden, who failed to take action to prevent the continued harm.  Plaintiff W.M. files this motion seeking emergent relief requesting 1) leave to proceed by way of initials pursuant to Fed. R. Civ. P. 5.2; 2) for entry of writs of *capias ad respondendum* and attachment entering temporary restraints restricting J.O. from dissipating her assets in New Jersey; and 3) restraining Prudential Life Insurance Company from releasing life insurance proceeds to J.O. without further Order of this Court.

## STATEMENT OF FACTS

Beginning in 1997, Defendant J.O., formerly known as J.M., had custody of her two minor children W.M., then age three, and E.M, then age 1.  (Verified Compl. ¶ 11, 15.)  They resided with their maternal grandparents, including Defendant H.V. in his home in Gloucester City, New Jersey.  (Verified Compl. ¶ 5, 12, 16.) W.M.'s uncle and J.O.'s brother, W.V., also resided in W.V.'s home in Gloucester City, New Jersey.  (Verified Compl. ¶ 5.)

From 1997 to 2001, J.O and W.V. sexually, physically, and emotionally

1

abused W.M. (Verified Compl. ¶ 13.) These Defendants exposed W.M. to horrific and outrageous sexual batteries including fondling W.M.'s intimate parts while he was naked in bed and sexually penetrating W.M.'s anus with fingers and foreign objects, including kitchen utensils. (Verified Compl. ¶ 13, 23, 25.) The sexual abuse occurred approximately four times a week. (Verified Compl. ¶ 22.) J.O. and W.V. threatened W.M. if he did not join these Defendants in bed naked. (Verified Compl. ¶ 24.)

In addition, these Defendants forced W.M. to watch as J.O. and W.V. engaged in incestuous sexual acts and to watch as his younger brother was likewise molested and abused. (Verified Compl. ¶ 13.) These Defendants also forced W.M. to watch pornography. (Verified Compl. ¶ 21.) Defendant W.V. also choked and hit W.M. (Verified Compl. ¶ 20.)

Defendants J.O. and W.V.'s actions were done for their own self-gratification. (Verified Compl. ¶ 13, 82.) Although W.M. sought help to stop the abuse from H.V., a priest at his church of Saint Mary's Catholic Church Gloucester City, and the Roman Catholic Diocese of Camden, no one intervened to stop the abuse. (Verified Compl. ¶ 36.) These actions continued until around 2001 or 2002 when W.M.'s father learned of the abuse and a Pennsylvania Court intervened. (Verified Compl. ¶ 29.)

Once the abuse was discovered, W.M. began treatment with a child

psychiatrist, Philip M. Stein, who testified before a Pennsylvania Court regarding the abuse. (Verified Compl. ¶ 30-31.) As a result of Dr. Stein's testimony, J.O. was restricted to only supervised visitation at a facility. (Verified Compl. ¶ 32, Ex. A-C.) The Court maintained the supervised visitation until W.M. reached the age of majority after which the Pennsylvania Court no longer had jurisdiction over the matter. (Verified Compl. Ex. D.) Pennsylvania has made a finding of the sexual abuse. (Verified Compl. Ex. A-C.)

Defendant J.O. and W.V.'s conduct caused severe emotional distress to W.M. that continues to affect him to this day. (Verified Compl. ¶ 35.)

## PROCEDURAL HISTORY

The Verified Complaint seeks that this Court grant relief pursuant to its diversity jurisdiction. 28 U.S.C. § 1332. The amount in controversy exceeds $75,000 and no Defendant is from Texas, the place of Plaintiff's domicile. (Verified Compl. ¶¶ 1-9.) Plaintiff seeks to proceed by way of initials due to the sensitive nature of the allegations and if Defendants' identities are revealed, Plaintiff's identity can be easily deduced.

Plaintiff W.M. proceeds with his application seeking temporary restraints against Defendant J.O. Specifically, he seeks entry of two writs: *capias ad respondendum* and attachment pending return of the Order to Show Cause. As explained in the Legal Argument, the relief should be granted because Defendant

3

J.O. is a resident of the State of New York and has assets in New Jersey that can be used to compel her participation in this litigation as well as create a fund for the potential recovery of a judgment in this matter due to the outrageous torts for which Defendant J.O. is responsible.

## LEGAL ARGUMENT

### POINT ONE

**Plaintiff and Individually Named Defendants Should
Be Able to Proceed By Way of Initials.**

Plaintiff W.M. and Defendant J.O. are son and mother, respectively. (Verified Compl. ¶ 43.)  If any of the individually named defendants' names are used in this litigation, Plaintiff's identity can be easily deduced from the public record. (Verified Compl. ¶ 43.)  Plaintiff is a childhood sexual abuse victim and currently serving in the United States military.

The New Jersey Legislature passed substantive legislation protecting the identity of childhood sexual abuse victims.  N.J.S.A. 2A:61B-1.[1]  This statute is substantive law and not procedural as it was created by the Legislature rather than

---

[1] N.J.S.A. 2A:61B-1(f)(1) mandates that "The name, address, and identity of a victim or a defendant shall not appear on the complaint or any other public record as defined in P.L.1963, c. 73 (C.47:1A-1 et seq.). In their place initials or a fictitious name shall appear." See e.g., T.S.R. v. J.C., 288 N.J. Super. 48, 54–55 (App. Div. 1996) ("In many cases of sexual abuse of children, the perpetrator is a parent or close relative; in such a case, publicly revealing the defendant's identity would be tantamount to revealing the victim's identity.")

4

the New Jersey Judiciary.  N.J. Const. art. VI, § 2, ¶ 3; Winberry v. Salisbury, 5 N.J. 240, 255, cert. den., 340 U.S. 877 (1950) (explaining the constitutional balance of powers in New Jersey).

Plaintiff has a fear that if he proceeds without confidentiality then his co-workers or supervisors at the United States military may treat him differently or may take action adverse to him.  (Verified Compl. ¶ 47.)  Plaintiff has no ulterior motive to seeking to proceed with initials.  (Verified Compl. ¶ 48.)  A party is permitted to proceed anonymously in a cause of action upon establishing that there is a (1) fear of severe harm if the identities of the parties are revealed and (2) that fear is reasonable. Doe v. Oshrin, 299 F.R.D. 100, 102 (D.N.J. 2014). The court must balance a party's interest and fear with the public's interest in an open litigation process. Doe v. Megless, 654 F.3d 404, 408 (3d Cir. 2011).

The Third Circuit has established factors favoring anonymity:

> (1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.

[Doe v. Coll. of New Jersey, 997 F.3d 489, 495 (3d Cir. 2021) (quoting Megless, 654 F.3d at 409).]

Applying these factors to the case at bar, the Court should permit Plaintiff to proceed with anonymity.  First, W.M. has gone through great lengths to maintain confidentiality by filing this Order to Show Cause under seal.  Next, W.M. has substantial fears that this litigation could harm his career with the United States military. (Verified Compl. ¶ 46.)  Third, the New Jersey Legislature has established legislation so that victims like M.W. do not need to reveal their identities in publicly accessible documents.  N.J.S.A. 2A:61B-1. Fourth, there is no public interest in disclosing W.M.'s identity; he is not a public official.  Fifth, if W.M. is required to disclose his identity, he will not proceed in this forum.  Finally, W.M. has no ulterior motive as to why he seeks to proceed anonymously.  (Verified Compl. ¶ 48.)

The Third Circuit factors advising against anonymity include: (1) the public's interest in accessing the litigants' identities; (2) "whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public interest which is normally obtained;" and (3) whether opposition to anonymity is illegitimately motivated. Megless, 654 F.3d at 409. Although there is a recognized interest in public access to the identities of litigants in most cases, that interest is severely outweighed by Plaintiff's fear of the public, and more

importantly, the military, discovering that he was a victim of child sexual abuse at the hands of his own mother.

Thus, in accordance with Plaintiff's substantive rights pursuant to New Jersey statutory law, as well as in congruence with Third Circuit case law, Plaintiff should be allowed to plead the parties' names by way of initials.

## POINT TWO

### This Court Should Issue a Writ of *Capias ad Respondendum* In Order to Compel Non-Resident Defendant J.O. to Participate in this Litigation.

Defendant J.O. is a resident of the State of New York. (Verified Compl. ¶ 3.) New Jersey has granted rights to ensure participation in the litigation by a non-resident who is subject to the Court's jurisdiction for committing an outrageous tort through entry of a writ of *capias ad respondendum*. Here, the remedy should be used in the case at bar to ensure W.M.'s mother, J.O., participate in this litigation in order to respond to the atrocities she inflicted and let be inflicted upon W.M.

Fed. R. Civ. P. 64(a) provides that "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment."

New Jersey's statute provides:

> A *capias ad respondendum* shall issue in an action founded upon a tort only when the action is founded upon (a) an outrageous battery or a mayhem, (b) a claim of damages for the misconduct or neglect of a public officer

7

or (c) a wilful or malicious act and the defendant is a
nonresident or is about to remove from the state. In such a
case the court shall hold the defendant to bail, in an amount
which it thinks proper under the circumstances.

[N.J.S.A. 2A:15-41.]

"The aim or purpose of a *capias* is to compel the appearance of defendant in

court to answer the action, by actual arrest of his person." Iaria v. Pub. Serv. Mut.

Ins. Co., 31 N.J. 386, 389 (1960) (quoting 6 C.J.S. Arrest § 57, p. 672.)  In the event

the defendant does not appear, then the writ provided in either a bail or a surety

ensures that the plaintiff will be able to either recover the bail or from a surety

following a verdict.  Iaria, 31 N.J. at 389-90 (citing N.J.S.A. 2A:15-47).

The New Jersey Appellate Division has explained the purpose to *capias ad*

*respondenum* is to compel a non-resident defendant to participate in this Court's

proceedings. Doe v. Uhler, 220 N.J. Super. 522, 525-26 (Law Div. 1987).  The writ

"assures defendant's physical presence when ordered by the court." Id. at 526.  Upon

entry of a judgment, the "*capias ad respondendum* turns into a *capias ad*

*satisfaciendum.*" Id.

The New Jersey Supreme Court has explained that *capias ad respondendum*

constitutes "original process" that sets bail against a defendant in a civil matter.

Perlmutter v. DeRowe, 58 N.J. 5, 8–9 (1971).  The New Jersey Supreme Court has

found that the writ may be issued against a non-resident, which is then served in

New York.  Kryn v. Kahn, 54 A. 870, 871 (N.J. Sup. Ct. 1903). The amount of bail

8

to be set by this Court is up to its discretion because the damages sought are unliquidated. Perlmutter, 58 N.J. at 12, n. 4. The New Jersey Supreme Court has further explained that there does not need to be a demand made to defendant prior to the institution of suit. Kryn, 54 A. at 871.

The writ may be issued for inflicting mayhem, which at common law, the test for mayhem was that the victim was unable to defend against the attack. Messina v. Petroli, 11 N.J. Misc. 583, 584 (Cir. Ct. 1933). Here, clearly, the four year-old W.M. was unable to defend against the sexual, physical, and emotional abuse that he sustained four times a week for four years. (Verified Compl. ¶¶ 12, 22.)

Here, J.O. committed a series of outrageous torts by sexually violating her young child, W.M. and permitting her own brother to likewise violate W.M. (Verified Compl. ¶¶ 12-36.) She stuck spoons and other utensils into W.M.'s rectum in order to sexually gratify herself. (Verified Compl. ¶¶ 13, 82.) W.M. was a young child, and had no way to prevent the abuse by his own mother, J.O. (Verified Compl. Ex. A.) Moreover, J.O. knew her brother, W.V., was physically and sexually abusive towards W.M., but she did not protect him from her brother, W.V. (Verified Compl. ¶¶ 20-25.)

As a result of the continued sexual and physical abuse, W.M. was emotionally scarred for the rest of his life. (Verified Compl. ¶¶ 35, 63-66.) Therefore, this Court has sufficient basis that includes findings of the abuse from another court to grant

entry of the writ of *capias ad respondendum*.  (See Verified Compl. Ex. A-D.)

### POINT THREE

### Entry of a Writ of Attachment Is Appropriate in This Matter.

This Court should take actions to preserve J.O.'s assets located within this State so that the lawsuit will not be meaningless.  Therefore, W.M. respectfully request that an *ex parte* writ of attachment be entered against J.O.'s property located in New Jersey.

Under federal law, any remedy available in state court is also available in this court.  Fed. R. Civ. P. 64.   The remedy of attachment "shall be liberally construed, as a remedial law for the protection of resident and nonresident creditors and claimants."  N.J.S.A. 2A:26-1.  The writ of attachment may be used "as initial process to compel" the non-resident defendant to appear in court.   Wolfson v. Bonello, 270 N.J. Super. 274, 290-91 (App. Div. 1994).

The purpose behind the writ of attachment is to serve "as security for any judgment eventually obtained against the owner of the attached property."  Doe v. Uhler, 220 N.J. Super. at 526 (citing Fulop, Attachment and Sequestration, 20 N.J. Prac. § 1781 (2d. 1973)); N.J.S.A. 2A:26-2.  A writ of attachment may issue even if defendant owns enough real estate within New Jersey to satisfy any potential judgment. Seiden v. Fishtein, 44 N.J. Super. 370, 376 (App. Div. 1957).  A writ of attachment may issue in tort cases seeking unliquidated damages, particularly where

the tort is "of an 'outrageous nature.'" Id. at 527.

In Uhler, the court found a plaintiff alleging aggravated sexual assault was entitled to a writ of attachment even though the defendant had posted bail in the companion criminal matter. Ibid. The court found "sexual abuse of the child" constitutes an outrageous battery for purposes of both attachment and *capias ad respondendum*. Id. at 525-26.

This court has recognized that "[a] writ of attachment is generally obtained for one of two purposes: to acquire jurisdiction over an out-of-state defendant to the extent of the defendant's property located in the state, or to gain security for a claim pending as of the time of attachment." Sentry Ins. v. Sky Mgmt., Inc., 34 F. Supp. 2d 900, 903 (D.N.J. 1999) (first citing Bruce A. Tritsch, Attachment in New Jersey, 11 Rutgers L. Rev. 714, 714 (1957); then citing S.D. Sales Corp. v. Doltex Fabrics Corp., 92 N.J. Super. 586, 588, 590 (Law Div.1966), aff'd, 96 N.J. Super. 345 (App. Div. 1967); and then citing N.J.S.A. 2A:26–8)). The attachment statute is "remedial" with one of the purposes to protect the claimant. Sentry, 34 F. Supp. 2d at 903 (citing N.J.S.A. 2A:26-1).

Under New Jersey law, a plaintiff may rely upon writs available at common law to secure the payment of a judgment. Mueller v. Seaboard Comm'l Corp., 5 N.J. 28, 39 (1990) (holding that a "prima facie case is all that is required to be made out by the affidavits; plenary proof is neither required nor practical since a writ of

attachment must issue quickly if it is to serve its purpose").

New Jersey's attachment statute, N.J.S.A. 2A:26–2, provides, in relevant part, as follows:

> An attachment may issue out of the superior court upon the application of any resident or nonresident plaintiff against the property, real and personal, of any defendant in any of the following instances:
>
> a. Where the facts would entitle plaintiff to an order of arrest before judgment in a civil action ... or
>
> b. Where the defendant . . . is a nonresident of this state, and a summons cannot be served on him in this state ... or
>
> c. Where the cause of action existed against a decedent, which survives against his heirs, devisees, executors, administrators or trustees, and there is property in this state which by law is subject to plaintiff's claim ... or
>
> d. Where plaintiff has a claim of an equitable nature as to which a money judgment is demanded against the defendant, and the defendant . . . is a nonresident and a summons cannot be served upon him in this state; or
>
> e. Where the defendant is a corporation created by the laws of another state but authorized to do business in this state and such other state authorizes attachments against New Jersey corporations authorized to do business in that state.
>
> [N.J.S.A. 2A:26–2.3.]

Pursuant to N.J.S.A. 2A:26-2, a plaintiff is entitled to a writ of attachment if the plaintiff demonstrates a basis for entry of the writ of *capias ad respondendum*: "where the facts would entitle plaintiff to an order of arrest before judgment in a civil action," a writ of attachment may issue.  As set forth in Point Two, Plaintiff has

pled and provided evidence of facts entitling plaintiff to an order of arrest before judgment. Thus, there is a basis for entry of the writ of attachment.

This court will grant a writ of attachment if there is a prima facie showing that plaintiff has satisfied N.J.S.A. § 2A:15-41. <u>Sentry</u>, 34 F. Supp. 2d at 905. The court at this stage does not need to make a finding that the plaintiff's claims are true; only that there is sufficient evidence sufficient to warrant entry of a writ of *capias ad respondendum*. <u>Sentry</u>, 34 F. Supp. 2d at 905.

In addition to entering the writ based upon the showing for *capias ad respondendum*, Plaintiff has a second basis for the writ of attachment because J.O. is not a resident, has assets located within this State, and committed an outrageous tort. N.J.S.A. 2A:26–2.3. A plaintiff is entitled to entry of a writ of attachment upon a prima facie showing that defendant caused an outrageous tort. <u>Tanner Assoc., Inc. v. Ciraldo</u>, 33 N.J. 51, 62-63 (1960). New Jersey permits a writ of attachment to issue in matters arising from an outrageous tort as a security for the eventual judgment that will be imposed. <u>Uhler</u>, 220 N.J. Super. at 525-27.

In order to enter a writ of attachment, plaintiff must show:

> (1) there is a probability that final judgment will be entered in favor of plaintiff; (2) there are statutory grounds for issuance of the writ; and (3) there is real or personal property of defendant at a specific location within New Jersey which is subject to attachment.
>
> [<u>Uhler</u>, 220 N.J. Super. at 526.]

13

Second, the statute clearly provides that plaintiffs may bring an action for a writ of attachment upon a prima facie showing of an outrageous tort. N.J.S.A. 2A:15-41 and 2A:26-2(a). Here, Plaintiff W.M. has showing a prima facie case of an outrageous tort through the proofs established in the Pennsylvania family action. (Verified Compl. Ex. A-D.)

Thus, the law is clear that even non-resident W.M. has a right to attachment against any property that Defendant J.O. has within this State and J.O. is not a resident. N.J.S.A. 2A:26-2.3. This property includes a bank account at Citizen's Bank with a branch in Camden County, and insurance proceeds to be issued by Prudential Insurance Company, both of which have locations within this State. (Verified Compl. ¶ 7.)

Here, J.O. is now a resident of the State of New York. (Verified Compl. ¶ 3.) She has received or will be receiving insurance proceeds that should be used to satisfy her son's claim for injury. (Verified Compl. ¶ 8.) Accordingly, the attachment remedy applies.

## POINT FOUR

**The Temporary Restraints Should Be Issued on an *Ex Parte* Basis So As Not to Cause Irreparable Injury.**

Because Plaintiff has established a basis for entry of the two writs, this Court should enter temporary and permanent restraints to protect Plaintiff. Marsellis–Warner Corp. v. Rabens, 51 F.Supp.2d 508, 536 (D.N.J.1999) ("State law governs

14

an application for a writ of attachment.")

In exercising this discretion to enter the writs, the district court weighs the same factors articulated by the New Jersey Supreme Court in Crowe v. DeGoia, 90 N.J. 126 (1982). Ortho Pharm. Corp. v. Amgen, Inc., 882 F.2d 806, 812 (3d Cir. 1989). A party is entitled to file an application for a preliminary injunction pursuant to L.Civ.R. 65.1.

> 1. The likelihood that the applicant will prevail on the merits at final hearing; 2. The extent to which the applicant is being irreparably harmed by the conduct complained of; 3. The extent to which the defendant will suffer irreparable harm if the preliminary injunction is issue; and 4. How the public interest would be affected by the grant or denial of the injunction.
>
> [Pappan Enters v. Hardee's Foods Sys., 143 F.3d 800, 803 (3rd Cir. 1998); Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 191-92 (3d Cir. 1990).]

The above listed four factors should be balanced in determining whether to grant a preliminary injunction. Country Floors, Inc., v. Gepner, 930 F.2d 1056, 1062 (3d Cir. 1991); Eli Lilly & Co. v. Premo Pharm. Labs., Inc., 630 F2d 120, 136 (3d Cir. 1980); SI Handling Sys., Inc. v. Heisley, 753 F.2d 1244, 1254 (3d Cir. 1985). Moreover, "an application for a preliminary injunction need only prove a prima facie case, not a certainty that he or she will win." Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 173 (3d Cir. 2001)

A party seeking entry of an order to show cause must demonstrate irreparable

harm, a reasonable probability of a likelihood of success on the merits, the legal right is well settled, and less harm will come from entry of the order than denying the order. Crowe v. De Goia, 90 N.J. 126, 132-34 (1982). "Harm is generally considered irreparable in equity if it cannot be redressed adequately by monetary damages." Id. at 132-33. Here, Plaintiff has demonstrated irreparable harm because under the statutes providing for the writs of *capias ad respondendum* and attachment expressly permit plaintiffs to require Defendant J.O. as a non-resident to appear so bail may be set and to preserve defendant's assets while the action is pending. See N.J.S.A. 2A:15-41 and 2A:26-2.

Second, in entering the order to show cause, plaintiffs have demonstrated a likelihood of success on the merits for the entry of the writ. This court has explained that the likelihood of success on the merits factor is shown when it is "probable if it can reasonably and fairly convincingly be accepted as true, factual, or possible without being undeniably so." Sentry Ins. v. Sky Mgmt., Inc., 34 F. Supp. 2d 900, 905 (D.N.J. 1999). This Court has found "a result is probable if it 'can reasonably and fairly convincingly be accepted as true, factual, or possible without being undeniably so.'" Sentry, 34 F. Supp. 2d at 905 (citing Fravega v. Security Sav. & Loan Ass'n, 192 N.J. Super. 213 (Ch. Div.1983) (quoting Random House Dictionary of the English Language 1146 (Unab. ed.1967)).

"To establish a likelihood of success on the merits, 'the moving party need

not demonstrate that its entitlements to a final decision after trial is free from doubt. Rather, the moving party must demonstrate a reasonable probability of eventual success in the litigation. Carlini v. Velez, 947 F. Supp. 2d 482, 485 (D.N.J. 2013).

For the court to enter the writ, plaintiffs must make a prima facie showing of an outrageous tort and that defendant is not a resident of this State. N.J.S.A. 2A:26-2; Tedards v. Auty, 232 N.J. Super. 541, 548-49 (App. Div. 1989). Here, the Pennsylvania Court has made findings that an outrageous tort occurred, and as a result, J.O. could only visit W.M. under court-ordered supervision. (Verified Compl. A-D.) Such limited visitation continued until W.M. became of age, and he was able to stop being forced to see his child-abusing mother. (Verified Compl. ¶ 34.)

Moreover, the law is well-settled that a survivor of child abuse is entitled to these writs against the abuser. N.J.S.A. 2A:15-41; Messina, 11 N.J. Misc. 583 (Cir. Ct. 1933). The law is also well-settled that a party is entitled to seek entry of this writ to secure payment of the judgment. Uhler, 220 N.J. Super. at 527 (holding writ of attachment should be issued in a case arising from an outrageous battery).

Finally, as to the balance of the interests' factor, more harm will come to Plaintiff without protection from the writs if J.O. depletes her assets and does not participate in this litigation, than if J.O. posts a bond and her assets are frozen while the lawsuit goes forward. Without the writ, W.M. may be left without an ability to be compensated for the horrific injuries that his mother inflicted and permitted to be

inflicted against W.M.  Accordingly, the preliminary equitable relief must be entered while the civil matter proceeds.

In addition to meeting the basis for entry of the writ, plaintiffs are entitled to file this application on an *ex parte* basis.  Rule 4:60-5(b) authorizes the *ex parte* issuance of a writ of attachment where the Court finds that notice to the defendant would defeat the purpose of the writ.  In reviewing such an application, the court's review is limited to whether the affidavits make out a prima facie claim for a tort against the defendant.  Tanner Associates, Inc. v. Ciraldo, 33 N.J. 51, 64 (1960).

The writs should be entered *ex parte* because J.O. is likely to deplete her assets if given notice of the application.  Moreover, because she is a resident of the State of New York, without entry of the writ of *capias ad respondendum*, there is no way to compel her participation in this litigation. Equity requires the writ of attachment be entered here, so that, J.O. participates as a Defendant and that she does not deplete all of her assets in New Jersey.

Plaintiff has demonstrated irreparable harm to justify temporary restraints before the return date of the Order to Show Cause pursuant to L. R. Civ. Pro. 54.1(b) because if Defendant J.O. is put on notice of the action, she will deplete the assets that are currently located in New Jersey, namely, the contents of her bank accounts at Citizens Bank located in Camden County, New Jersey. Because New Jersey recognizes that the writs of *capias ad respondendum* and attachment may be used as

initial process, it justifies entry of the temporary restraints sought by this Order to Show Cause. Perlmutter v. DeRowe, 58 N.J. 5, 8–9 (1971); Wolfson v. Bonello, 270 N.J. Super. 274, 290-91 (App. Div. 1994).

## CONCLUSION

W.M. seeks leave to proceed by way of initials given the sensitive nature of the tort and the fact that he was a child at the time the tort was inflicted upon him. He further seeks entry of temporary restraints restricting J.O.'s ability to deplete her assets in New Jersey and requiring her to appear and post a bond to ensure her participation. Upon the return of the Order to Show Cause, the writ of *capias ad respondendum* and attachment should be entered to secure J.O.'s participation in the litigation and the eventual recovery in the civil action. Because of the heinous nature of the complaint and the difficulty W.M. will have in ensuring J.O.'s presence in this litigation, it is respectfully requested that the writ be issued and executed.

Respectfully submitted,

**LOMURRO, MUNSON, COMER, BROWN & SCHOTTLAND, LLC**
Attorneys for Plaintiff, W.M.

CHRISTINA VASSILIOU
HARVEY, ESQ.

Dated:  June 10, 2022