LOMURRO, MUNSON, COMER, BROWN & SCHOTTLAND, LLC
**CHRISTINA VASSILIOU HARVEY, ESQ.**
**ATTORNEY ID NO.: 023642004**
4 Paragon Way, Suite 100
Freehold, New Jersey 07728
(732) 414-0300
Attorney for Plaintiff

| | |
|---|---|
| W.M.;<br><br>    Plaintiff,<br><br>vs.<br><br>J.O.;<br><br>    Defendant. | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY<br>DOCKET NO.:<br>1:22-cv-03707-RBK-SAK<br><br>CIVIL ACTION<br><br>**AMENDED COMPLAINT** |

Plaintiff, W.M., by his attorneys Lomurro, Munson, Comer, Brown & Schottland, LLC, having been granted leave to amend as of right and to proceed with the parties only being identified by initials on June 13, 2022, now hereby files this Amended Complaint against Defendant, J.O. f/n/a J.M.:

**NATURE OF COMPLAINT**

1.   This case involves the tragic physical, sexual, and mental abuse suffered by W.M. ("Plaintiff") as a minor by his own mother, J.O., formerly known

as J.M., and his maternal uncle, W.V., while Plaintiff resided with them from approximately 1997 through 2002.

## THE PARTIES

2. Plaintiff W.M. is an individual who is a citizen of the State of Texas with a primary domicile in Fort Hood, Texas, and during the relevant time-period was a minor who lived in Gloucester City, New Jersey. Plaintiff is the first-born son of Defendant J.O.

3. Defendant J.O. is the mother of Plaintiff W.M. and E.M., who is now deceased. Upon information and belief, she is a citizen of the State of New York, and currently domiciled at 51 Flanders Lane, Albany, New York, and lived with Plaintiff in Gloucester City, New Jersey during the relevant time-period. Defendant J.O. was an active participant in the sexual abuse of Plaintiff and permitted her brother, W.V., to sexually and physically abuse plaintiff for several years.

4. W.V. is now deceased and died as a citizen of the State of New Jersey. Based upon information obtained from the Surrogate of New Jersey, there is no open or closed Surrogate matter for W.V.'s Estate. Before death, W.V. was a resident of the State of New Jersey, the last known address being 456 North Broadway, Gloucester City, New Jersey 08030. W.V., Plaintiff's maternal uncle, repeatedly sexually abused Plaintiff, from the time Plaintiff was approximately 4 years old until he was 8 years old while living with Plaintiff and his mother.

5. H.V. is now deceased and died as a citizen of the State of New Jersey. Based upon information obtained from the Surrogate of New Jersey, there is no open or closed Surrogate matter for H.V. Before death, H.V. was a resident of the State of New Jersey, the last known address being 456 North Broadway, Gloucester City, New Jersey 08030. H.V., Plaintiff's maternal grandfather, owned and occupied the house where the numerous sexual abuses occurred.

## JURISDICTION AND VENUE

6. Jurisdiction of this Court over Plaintiffs' claims is predicated on diversity jurisdiction as Plaintiff W.M. is a citizen of the State of Texas, and no Defendant is a citizen of the State of Texas, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

7. Venue is proper in this District because conduct giving rise to this action occurred within this District of New Jersey in Camden County, New Jersey.

## ALLEGATIONS COMMON TO ALL CLAIMS

8. Plaintiff repeats and restates the allegations of all the preceding paragraphs as if set forth at length herein.

9. Plaintiff alleges long-term sexual abuse at the hands of his mother, Defendant J.O., and maternal uncle, Defendant Estate of W.V., including but not limited to the years 1997 to 2001 when his mother had primary custody of him and his brother, E.M.

10. Throughout many years in the home of J.O, W.V., and H.V., Defendant J.O. and H.V., with cold-blooded impunity and malice repeatedly committed sexual battery upon the Plaintiff in the County of Camden, New Jersey, with the intent to commit harmful and sexually offensive contact with the intimate parts of plaintiff, repeatedly committed sexual battery upon Plaintiff by having physical contact with Plaintiff. These contacts included but not limited to Defendant J.O. and W.V. fondling Plaintiff's intimate parts while naked in bed with Plaintiff, sexually penetrating Plaintiff's anus with fingers and foreign objects, forcing Plaintiff to watch J.O. and W.V. engage in incestuous sexual acts together, and forcing Plaintiff to watch Defendant J.O. and W.V. abuse Plaintiff's younger brother, E.M., who is now deceased. These actions were taken for J.O. and W.V.'s own gratification and harmed W.M.

11. Plaintiff was born on June 29, 1994, in or around Mount Laurel, New Jersey. Soon after Plaintiff was born, Plaintiff and his parents moved to Pennsylvania.

12. In or around 1997, Plaintiff's parents divorced and Plaintiff's mother, Defendant J.O., was granted primary custody of Plaintiff and his younger brother, E.M.

13. In or around 1997, Defendant J.O. took Plaintiff and his younger brother to live with H.V., Plaintiff's maternal grandfather, in Gloucester City, New Jersey.

14. Upon information and belief, from 1997 through approximately 2001, Plaintiff resided at H.V.'s home in Gloucester City, New Jersey with Defendant J.O. and W.V.

15. Upon information and belief, in or around 1997 when Plaintiff first moved in with Defendant J.O., H.V., and W.V.

16. Upon information and belief, when Plaintiff was approximately 4 or 5 years old, Plaintiff was subjected to physical abuse at the hands of W.V. At first, the abuse was confined to W.V. hitting and choking Plaintiff. However, after living with Defendant J.O., W.V., and H.V. for a few months, the physical abuse escalated into sexual abuse at the hands of J.O. and W.V.

17. Upon information and belief, Defendant J.O. would walk around the house fully naked in front of Plaintiff, W.V., and H.V. Additionally, upon information and belief, H.V. would openly watch pornographic material on the television in front of Plaintiff and Defendant J.O. and W.V.

18. Upon information and belief, beginning when Plaintiff was approximately four or five years old, Defendant J.O. and W.V. began sexually abusing Plaintiff approximately four times a week. The sexual abuse began with

W.V., in the presence of Defendant J.O., grabbing Plaintiff's intimate parts and buttocks.

19. Upon information and belief, during the relevant time-period, Defendant J.O. and W.V. forced Plaintiff to strip his clothes and accompany Defendant J.O. and W.V. in bed as they engaged in incestuous, sexual acts with one another unclothed. Additionally, both Defendant J.O. and W.V. would forcibly fondle Plaintiff's intimate parts while in bed with one another.

20. Upon information and belief, Plaintiff told Defendant J.O. and W.V. that he did not want to join them in bed naked, however, Defendant J.O. and W.V. threatened Plaintiff if he did not acquiesce to their demands.

21. Upon information and belief, on multiple occasions, W.V. forcibly penetrated Plaintiff's anus with his fingers and foreign objects, including but not limited to kitchen utensils.

22. Upon information and belief, during the relevant time-period, Plaintiff's mother, Defendant J.O. would forcibly perform numerous enemas on Plaintiff whenever he complained of a stomachache.

23. The sexual and physical abuse of Plaintiff continued until approximately 2001, when Plaintiff was visiting his father, and father suspected Plaintiff was being neglected and abused.

24. In or around 2001 to 2002, Plaintiff's father was awarded full custody of Plaintiff and his younger brother, and Plaintiff moved to Pennsylvania to live with his father.

25. After Plaintiff moved to Pennsylvania to live with his father, Plaintiff sought mental health treatment with Dr. Philip M. Stein as a result of the repeated physical, sexual, and emotional abuse inflicted upon plaintiff by Defendant.

26. Dr. Stein testified before the Court of Common Pleas, Lehigh County, Pennsylvania, Civil Division – Law Division.  According to Dr. Stein, W.M. did not want to return to his mother's home because of the abuse and that W.M. feared for his safety. Dr. Stein further testified that the allegations of abuse included that things were inserted into W.M.'s rectum and that the children's private parts were "hit with hammers." Attached as Exhibit "A" is a true copy of the redacted transcript from Dr. Stein's testimony taken on January 17, 2003.

27. As a result of Dr. Stein's testimony, J.O. was only permitted limited supervised visitation.  Attached as Exhibit "B" is a true copy of the redacted custody hearing officer's decision limiting J.O.'s visits with W.M. and E.M. dated February 12, 2003.

28. The Court accepted the recommendation of the custody officer, and entered an Order dated May 28, 2003.  Attached as Exhibit "C" is a true copy of the redacted custody Order.

29. The limited visitation was continued by Court Order dated May 6, 2013. Attached as Exhibit "D" is a true copy of the redacted Order. Since entry of that Order, W.M. has only had supervised limitation with J.O., which continued until W.M. reached the age of majority, and he was able to make the choice not to see J.O. due to this past child sexual abuse.

30. As a direct and proximate result of the repeated sexual batteries upon the Plaintiff by Defendant J.O., the Plaintiff suffered imminent apprehension of conduct of a sort that disgusted him on life, had suffered greatly in his mental health, strength and activity, injury to his body and shock to his nervous system, all of which injuries have caused and will continue in the future to cause Plaintiff great mental and physical and nervous pain and suffering an emotional distress, all to Plaintiff's extreme damage.

31. As a further, direct and proximate result of the repeated sexual batteries by Defendant J.O., along with the refusal, neglect, or failure to investigate and protect Plaintiff, Plaintiff was required to and did and will incur significant medical and incidental expenses.

32. On or about August 15, 2021, E.M. tragically took his own life.

33. At the time of his death, his biological mother, Defendant J.O., was the default beneficiary to his life insurance policy issued by Prudential Life Insurance Company, who was to receive fifty percent of the policy's gross pay-out.

34. It is plaintiff's position that Defendant J.O. is not entitled to the proceeds of the life insurance policy she was or will be paid as a result of her abuse of her children and such monies unjustly enrich her.

## Count One

## (Leave to Proceed with Initials and File Under Seal)

35. Plaintiff repeats and restates the allegations of all the preceding paragraphs as if set forth at length herein.

36. Plaintiff's claim involves sexual abuse that occurred when he was a minor.

37. Both Plaintiff and the individual defendants should be permitted leave to appear in the public record with initials.

38. Plaintiff and the individual Defendant J.O. are son and mother. Accordingly, if Defendant J.O. is named in the publicly filed Complaint then Plaintiff W.M.'s identity will be easily discoverable from the pleadings.

39. The New Jersey Legislature required both victim and defendant to appear by way of initials in court proceedings N.J.S.A. 2A:61B-1.

40. Under New Jersey's Constitution, the Legislature has created substantive law as procedural rules are reserved for the Court. N.J. Const. art. VI, § 2, ¶ 3; Winberry v. Salisbury, 5 N.J. 240, 255, cert. den., 340 U.S. 877 (1950).

41. Plaintiff W.M. has a sufficient fear that if his identity will be disclosed it will effect his reputation within the United States military, where he is currently enlisted. The effect may change how his co-workers treat him or affect the assignments he may be given.

42. If the request is denied, Plaintiff will not be able to pursue this remedy in this forum because of the need to keep his status as a survivor of childhood sexual abuse confidential.

43. Plaintiff does not have any illegitimate or ulterior motive to proceed confidentiality; his desire is consistent with the New Jersey Legislature's recognition that childhood sexual abuse survivors should be able to proceed to litigate their claims of abuse confidentially.

44. Accordingly, because of the nature of the allegations, this Court should grant leave for the individual parties to proceed with initials.

**WHEREFORE**, Plaintiff and the individual Defendant are entitled to proceed in public filings with initials.

## Count Two

**(By Plaintiff Against J.O. For Statutory Claim Under New Jersey Child Sexual Abuse Statute)**

45. Plaintiff repeats and restates the allegations of all the preceding paragraphs as if set forth at length herein.

46. Under N.J.S.A. 2A:61B-1, "Action for Sexual Abuse," New Jersey provides a statutory cause of action to supplement common law causes of action for child sexual abuse.

47. Under the New Jersey Child Sexual Abuse Statute, not only are the physical abusers themselves liable for the greater of statutory or actual damages, with actual damages including compensatory and punitive damages and cost of suit (compensatory damages including pain and suffering, medical expenses, emotional trauma, diminished childhood, diminished enjoyment of life, costs of counseling, and lost wages), together with reasonable attorney's fees, but the same, primary liability attaches to any "person standing in loco parentis who knowingly permits or acquiesces in sexual abuse by any other persons." Such persons, known as passive abusers, are also deemed to have committed sexual abuse upon a child.

48. J.O. and H.V. engaged in physical and sexual abuse of Plaintiff while he was a minor.

49. J.O. was aware of the physical, sexual, and emotional abuse of W.M. but failed to take actions to prevent it.

50. In New Jersey, such persons standing in loco parentis to the abused child need not be natural persons, and they may include institutions and/or corporations.

11

51. At all relevant times, Defendant J.O. owed a duty to protect Plaintiff from sexual abuse and resided in the same household as Plaintiff while the abuse occurred.

52. Defendant J.O. is liable to Plaintiff under the New Jersey Child Sexual Abuse Statute for statutory sexual abuse, for having knowingly permitted and/or acquiesced in the ongoing sexual abuse by J.O. and W.V. of Plaintiff when he was a child.

53. As a direct and proximately result of the willfulness, negligence, and carelessness of Defendant J.O., Plaintiff sustained severe and permanent injuries, including but not limited to pain, suffering, emotional and psychological trauma, physical trauma, and humiliation.

**WHEREFORE**, Plaintiff demands judgment against Defendant J.O. for damages, punitive damages, interests, costs of suit, attorney's fees, and such other relief as the Court deems fair and equitable.

### Count Three

**(By Plaintiff Against Defendant J.O. for Sexual Abuse/Battery)**

54. Plaintiff repeats and restates the allegations of all the preceding paragraphs as if set forth at length herein.

55. In the County of Camden, New Jersey, Defendant J.O. and W.V. repeatedly committed sexual abuse/battery against Plaintiff as described within the above complaint.

56. Defendant J.O. and W.V. committed sexual abuse and battery upon Plaintiff in Defendant H.V.'s house while Defendant J.O., W.V., and H.V. were residing in said household.

57. As a direct and proximate result of the repeated batteries upon Plaintiff, he has suffered injuries to his health, strength and activity, injury to his body and shock and injury to his nervous system, all of which injuries have caused and will continue to cause Plaintiff great mental, physical, and nervous pain and suffering, and emotional distress all to the Plaintiff's damage.

**WHEREFORE**, Plaintiff demands judgment against Defendant J.O. for damages, punitive damages, interests, costs of suit, attorney's fees, and such other relief as the Court deems fair and equitable.

## Count Four

**(By Plaintiff Against Defendant J.O., for Negligent and Intentional Infliction of Emotional Distress)**

58. Plaintiff repeats and restates the allegations of all the preceding paragraphs as if set forth at length herein.

59. Defendant J.O., H.V., and W.V. engaged in extreme and outrageous conduct that shocked the conscious.

60. Defendant J.O., H.V., and W.V. acted negligently, willfully, and intentionally in the executing the extreme, outrageous conduct that included inserting or letting another person insert items into W.M.'s rectum when he was a powerless child; requiring W.M. to watch his mother and uncle fornicate; and failing to stop sexual, emotional, and physical abuse of W.M.

61. Defendant J.O.'s conduct, either singly or in concert, proximately caused W.M. to suffer from extreme emotional distress that continues to haunt him to this day.

**WHEREFORE**, Plaintiff demands judgment against Defendant J.O. for damages, punitive damages, interests, costs of suit, attorney's fees, and such other relief as the Court deems fair and equitable.

### Count Five

**(By Plaintiff Against Defendant J.O. for Negligence and Gross Negligence)**

62. Plaintiff repeats and restates the allegations of all the preceding paragraphs as if set forth at length herein.

63. Defendant J.O. owed Plaintiff a duty to use reasonable care to ensure the safety and well-being of her son.

64. J.O. owed a duty to prevent further abuse by her brother inflicted upon W.M.

65. N.J.S.A 9:6-8.10 ("Reports of Child Abuse") states: "Any person having reasonable cause to believe that a child has been subjected to child abuse, including sexual abuse, or acts of child abuse shall report the same immediately to the Division of Child protection and Permanency by telephone or otherwise." Yet Defendants failed to report the abuse as required, thus breaching their duty of care.

66. In New Jersey, which maintains a strong policy interest in protecting children from sexual abuse, the fact that statutory law requires any person to report suspected sexual abuse of children creates a duty, that when breached, can give rise to a common law action of negligence.

67. Defendant J.O. breached the duty to protect her son from further abuse.

**WHEREFORE**, Plaintiff demands judgment against Defendant J.O. for damages, punitive damages, interests, costs of suit, attorney's fees, and such other relief as the Court deems fair and equitable.

### Count Six

### (Collateral Estoppel / Claim Preclusion / Res Judicata)

68. Plaintiff repeats and restates the allegations of all the preceding paragraphs as if set forth at length herein.

69. The Pennsylvania Court of Common Pleas has made findings substantiating the sexual abuse by J.O. See Exhibits A through D.

70. Plaintiff through his father and Defendant J.O. litigated whether sexual abuse occurred.

71. Pennsylvania entered a final Order for the sufficiency of the allegations.  See Exhibit C.

72. The sufficiency of the abuse was a material factor to the judgment limiting J.O. requiring supervision for all visitation with her sons, including W.M.

73. Defendant J.O. was the party litigating the issue of the abuse in the Pennsylvania matter.  See Exhibits A through D.

**WHEREFORE**, Plaintiff demands entry of an Order finding under collateral estoppel and issue preclusion, that Defendant J.O. did permit W.M. to be sexually abused.

          **LOMURRO, MUNSON, COMER, BROWN & SCHOTTLAND, LLC**
          Attorneys for Plaintiffs

          By: _____
          CHRISTINA VASSILIOU HARVEY, ESQ.

Dated:  June 21, 2022

**Verification of Other Causes of Action Pursuant to F.R.C.P. 11.2**

I am an attorney at law in the State of New Jersey and I hereby declare under penalty of perjury that there is no other cause of action pending involving these claims.

I DECLARE under penalty of perjury under the laws of the United States of America that the foregoing information contained in the is true and correct.

Executed on June 21, 2022

By: _____
CHRISTINA VASSILIOU HARVEY, ESQ.